1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   CESAR RODELAS,                        Case No. 14-cv-05017-JST

            Plaintiff,
8                                          ORDER DENYING PETITION FOR
                                           WRIT OF HABEAS CORPUS;
9        v.                                DENYING CERTIFICATE OF
                                           APPEALABILITY
10  ERIC ARNOLD,

            Defendant.
11

12

13          Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to

14   28 U.S.C. § 2254 by Petitioner Cesar Rodelas, challenging the validity of his state court sentence.

15   Respondent has filed an answer to the petition, and Petitioner has filed a traverse.  The Court will

16   deny the petition.

17                          **I. PROCEDURAL HISTORY**

18          On September 25, 2012, Petitioner pled no contest in Alameda County Superior Court to

19   eleven felony changes and thirty-three misdemeanor charges, arising out of three separate

20   incidents of serious domestic violence incidents against his former girlfriend, and out of violations

21   of a restraining order.  Answer, Ex. 1 ("CT") 419–26.[1]  The felony charges consisted of three

22   counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)); three counts of vandalism

23   (Cal. Penal Code § 594), two counts of making criminal threats (Cal. Penal Code § 422); one

24   count of kidnapping (Cal. Penal Code § 207(a)); one count of residential burglary (Cal. Penal

25   Code § 459); and one count of corporal injury to a cohabitant (Cal. Penal Code § 273.5).  CT 52–

26   62 and 419–26.  The misdemeanor changes included one count of possession of a dirk or dagger

27   ───────────────

28   [1] In citing to the Clerk's Transcript ("CT"), lodged as Exhibit 1 to the Answer, the Court refers to
    the page numbers provided on the upper right-hand corner of each page.

United States District Court
Northern District of California

1    (Cal. Penal Code § 12020(a)(4)); and thirty-two counts of violating a restraining order (Cal. Penal

2    Code § 166(a)(4)).  CT 52–62.  Petitioner also admitted as true enhancement allegations that he

3    was armed with a firearm during the kidnapping and during one of the criminal threats, and that he

4    committed the burglary and related vandalism while released on bail.  CT 447–49.

5          On December 15, 2012, the trial court sentenced Petitioner to twelve years in state prison.

6    CT 473 and Answer, Ex. 2 ("RT"),[2] Vol. 3 at 14–16.

7          Petitioner appealed his conviction.  On June 27, 2013, Petitioner's appellate counsel filed a

8    Wende brief[3] in the California Court of Appeal, declining to raise any specific issues and asking

9    the appellate court for an independent review of the record to determine whether there were any

10   issues that would, if resolved favorably to Petitioner, result in reversal or modification of the

11   judgment.  See Answer, Ex. 4.[4]  Pursuant to Anders v. California, 386 U.S. 738, 744 (1967),

12   appellate counsel identified for the appellate court five potential issues that might merit briefing on

13   appeal.[5]  On July 26, 2013, Petitioner filed a supplemental brief.[6]  People v. Rodelas, No.

United States District Court
Northern District of California

---

[2] In citing to the Reporter's Transcript ("RT"), lodged as Exhibit 2 to the Answer, the Court refers to the page numbers provided on the upper right-hand corner of each page.

[3] In People v. Wende, 25 Cal. 3d 436 (1979), the California Supreme Court established a procedure that appointed appellate counsel must follow if she determines that an appeal would be frivolous.  The United States Supreme Court approved this process in Smith v. Robbins, 528 U.S. 259 (2000).  The procedure requires counsel to

> file[] a brief with the appellate court that summarizes the procedural and factual history of the case, with citations of the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief. He further requests that the court independently examine the record for arguable issues.

528 U.S. at 265.  In a Wende brief, counsel remains "silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing." Id. (internal citations omitted).

[4] In citing to exhibits to the Answer, outside of the Clerk's Transcript and Reporter's Transcript, the Court refers to the page numbers assigned by the Court's Electronic Court Filing system which are located on the upper right-hand corner of each page.

[5] The five issues were: (1) whether the five-minute limitation on Petitioner's personal statement was a denial of Petitioner's right to allocution and a denial of Petitioner's right to a fair sentencing hearing; (2) whether the trial court's consideration of a letter from Doe's father was an abuse of discretion; (3) whether an adequate statement of reasons was given by the trial court in support of the midterm sentence on the principal term; (4) whether Petitioner was subject to the on-bail enhancement attached to the burglary charge where the primary offense was initially charged as a misdemeanor; and (5) whether Petitioner was denied due process of law and fundamental fairness at the sentencing hearing.  See Answer, Ex. 3 at 9–10.

[6] In his supplemental brief, Petitioner raised three issues: (1) the time limitation on Petitioner's personal statement violated his due process rights; (2) the trial court's consideration of a letter from Doe's father violated his due process rights; and (3) it was error to prosecute or

A137758, 2013 WL 4743470, at *2 (Cal. Ct. App. Sept. 4, 2013).  The California Court of Appeal conducted its own independent review of the record and, on September 4, 2013, affirmed the judgment, finding that no arguable issues were presented for review.  Rodelas, 2013 WL 4743470.

On November 13, 2013, the California Supreme Court summarily denied Petitioner's petition for review.  See Answer, Exh. 6.

On July 15, 2014, Petitioner filed a state habeas petition in the Alameda County Superior Court, raising the same claims that he raises here.  On September 12, 2014, the Superior Court denied the petition as untimely and, in the alternative, for failure to state a prima facie case for relief.  See Answer, Exh. 7.  Petitioner filed a state habeas petition in the California Court of Appeal, which was summarily denied on October 30, 2014.  See id., Ex. 8.  On November 7, 2014, Petitioner filed a state habeas petition in the California Supreme Court, which was summarily denied on March 25, 2015.  See id., Exs. 9 and 10.

On November 13, 2014, Petitioner filed the instant federal petition for a writ of habeas corpus.  See Docket No. 1.  Petitioner alleges that trial counsel rendered ineffective assistance of counsel by (1) failing to conduct a reasonable, thorough, and timely investigation prior to advising Petitioner to reject the initial plea offer, and (2) failing to inform Petitioner of his maximum sentence exposure.  The Court stayed this action and held the petition in abeyance pending the resolution of the state court habeas proceedings.  See Docket No. 4.  On April 17, 2015, the Court lifted the stay and ordered Respondent to show cause why the petition should not be granted.  See Docket No. 6.

## II. FACTUAL BACKGROUND

Petitioner's felony charges arose from three separate incidents involving his former girlfriend, Jane Doe, whom Petitioner had dated for two years.  CT 497.

The first incident occurred on June 11, 2011, at approximately 2:30 a.m., at Spankey's Cocktails in Castro Valley.  CT 497.  At that time, Doe was at Spankey's with a friend and an ex-boyfriend.  CT 497, 520.  Petitioner showed up and tried to enter the bar, but was stopped by the

---

convict Petitioner because Doe had recanted her claims and declined to bring charges against Petitioner.  Rodelas, 2013 WL 4743470, at *2.

3

bouncer.  CT 520.  Petitioner became angry when he realized that Doe's ex-boyfriend was with her.  CT 497.  Doe, her friend, and her ex-boyfriend left the bar, and drove away in Doe's car.  CT 497, 520.  Doe then felt "a total of three jolts to the rear end of her vehicle."  CT 497.  She looked back and saw Petitioner bumping into her car with his GMC Yukon.  CT 497.  Petitioner hit her car with such force that her car's headlight housing broke, and Doe nearly collided with other parked cars.  CT 497.  Petitioner then fled the scene.  CT 497.  Doe made a U-turn and returned to Spankey's parking lot.  CT 520.  Police responded and took statements from Doe, her friend, and her ex-boyfriend.  CT 497, 520.  Doe informed the officers that both she and Petitioner had consumed alcohol prior to the incident.  CT 497.  There were no injuries sustained during this incident, and no one required medical attention.  CT 497.

The second incident occurred on June 22, 2011.  At approximately 6:35 p.m., Doe found Petitioner waiting for her in the parking lot of her job at the end of the workday.  CT 520.  Petitioner demanded that Doe get into his car.  CT 520.  Doe did not want to get into the car, but ultimately did because she did not want to cause a scene outside her job, and because she was frightened of Petitioner.  CT 520.  Petitioner eventually stopped at a gas station at approximately 7:20 p.m.  CT 497.  The gas station convenience clerk overheard Petitioner and Doe arguing in the parking lot.  CT 497.  Doe then entered the convenience store looking upset, and asked the clerk to call her a taxi.  CT 520.  Petitioner followed Doe into the store and demanded that Doe get back into his car.  CT 497, 520.  He continued yelling and shouting at her, and threatened to kill both Doe and the clerk if Doe refused to get back into the car.  CT 520.  Doe refused to leave, prompting Petitioner to leave the store.  CT 497.  Fearing for her safety and Doe's safety, the clerk remotely locked the store's exterior doors to prevent Petitioner's re-entry.  CT 497, 521.  Petitioner retrieved a gun from his car and returned to the store.  CT 497, 521.  Petitioner demanded to be let into the store while Doe and the clerk hid behind the front counter.  CT 521.  Petitioner then kicked the glass door, breaking the glass, and entered the store.  CT 497, 521.  Petitioner then grabbed Doe by her hair and dragged her over the broken glass and out of the store.  CT 497, 521.  Doe broke free in the parking lot, and refused to get into Petitioner's car.  CT 497, 521.  Petitioner finally left in his vehicle.  CT 497.  Oakland police officers arrived shortly

4

thereafter and took a statement from Doe and the clerk.  CT 521.  Doe suffered scrapes and cuts from being dragged over the broken glass.  CT 521.

The third incident occurred on September 19, 2011, when Petitioner broke into Doe's home.  CT 521.  Petitioner had previously lived in the home with Doe, but Doe had kicked him out two months prior.  CT 521.  That afternoon, Doe received a voicemail message from Petitioner while she was at work.  CT 521.  Petitioner stated that he was at her home and that he was going to burn it down.  CT 521.  Doe called the Hayward Police Department, who found Petitioner leaving the house as they arrived.  CT 521.  The police did not find a key to the house on Petitioner's person.  CT 521.  In looking for a point of entry, the police found that the sliding glass back door to Doe's home had been shattered.  CT 521.  The police also found Doe's clothes tossed around the bedroom and covered in red wine vinegar.  CT 521.

On September 28, 2011, Petitioner was taken into custody in relation to the above incidents.  CT 497.  At Petitioner's bail hearing, a restraining order was issued that prohibited Petitioner from contacting Doe.  CT 522.  Between December 1, 2011 and December 17, 2011, in violation of the court order, Petitioner called and spoke to Doe thirty-two times.  CT 522.

## III. DISCUSSION

### A.   Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v.

United States District Court
Northern District of California

Taylor, 529 U.S. 362, 412–13 (2000).  A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Williams, 529 U.S. at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions.  See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 562 U.S. 86, 103–04 (2011); Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam).  As the Court explained:  "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Felkner, 562 U.S. at 598 (citation omitted).  With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

Petitioner raised the claims presented in the instant petition for the first time in his state

1    habeas petition.  See Answer, Ex. 7.  Both the California Court of Appeal and the California

2    Supreme Court summarily denied Petitioner's habeas petition.  See Answer, Exs. 8 and 10.  The

3    Alameda County Superior Court was thus the highest court to have reviewed the claims in a

4    reasoned decision, and it is this decision that this Court reviews herein.  See Ylst v. Nunnemaker,

5    501 U.S. 797, 803–04 (1991) (state court decision to which Section 2254(d) applies is the "last

6    reasoned decision" of the state court).

7    **B.    Procedural Default**

8         Respondent claims that Petitioner's claims were procedurally defaulted, thereby precluding

9    federal habeas review.  Petitioner argues that the procedural default should be excused because he

10   has demonstrated "cause" pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012).

11        A state prisoner generally may not raise a claim in federal habeas if he has defaulted on the

12   claim "by violating a state procedural rule which would constitute adequate and independent

13   grounds to bar direct review in the U.S. Supreme Court."  Wells v. Maass, 28 F.3d 1005, 1008

14   (9th Cir. 1994) (citing Coleman v. Thompson, 501 U.S. 722, 729–30, 750–51 (1991).  The

15   Alameda County Superior Court denied Petitioner's claims as untimely and, in the alternative, for

16   failure to state a prima facie case for relief.[7]  California's timeliness rule is independent, Bennett v.

17   Mueller, 322 F.3d 573, 582–83 (9th Cir. 2003), and adequate, Walker v. Martin, 562 U.S. 307,

18   321 (2011).  Accordingly, the Court may only reach Petitioner's claims if Petitioner can show

19   cause and prejudice.  Coleman, 501 U.S. at 750.[8]

20

---

21   [7] The superior court denied the habeas petition as follows:

22        Relief is denied as untimely.  (See In re Clark (1993) 5 Cal. 4th 750–755; In re
     Sanders (1999) 21 Cal. 4th 697, 703; In re Robbins (1998) 18 Cal. 4th 770, 780 (Robbins);

23   In re Sodersten (2007) 146 Cal. App. 4th 1163, 1221; In re Nuñez (2009) 173 Cal. App.
     4th 709, 724).  Petitioner failed to show an absence of substantial delay and to demonstrate

24   good cause for the substantial delay, or that his claim falls within any of the exceptions to
     the untimeliness bar.  (Robbins, supra, 18 Cal. 4th at p. 780.)

25        Even if the claim was not procedurally barred, relief would have been denied for
     failure to state a prima facie case for relief.

26   Answer, Ex. 7.
     [8] A federal court may also consider a petitioner's procedurally defaulted claims if the petitioner

27   can demonstrate a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  However, this
     exception is inapplicable here because Petitioner acknowledges his guilt.  To show that a failure to
     consider the merits of a claim would result in a fundamental miscarriage of justice, a petitioner

28   must establish factual innocence.  See Gandarela v. Johnson, 286 F.3d 1080, 1085–86 (9th Cir.
     2002); Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001).

United States District Court
Northern District of California

In <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), the Supreme Court announced an equitable rule by which cause may be found for excusing a procedurally defaulted claim of ineffective assistance of trial counsel in certain circumstances.  <u>Martinez</u> provides a petitioner relief from a procedural default if the state petition (1) raised a "substantial claim of ineffective assistance at trial" (2) "in the initial-review collateral proceeding," where (3) "there was no counsel or counsel in that proceeding was ineffective."  <u>Martinez</u>, 132 S. Ct. at 1320.  To establish cause under <u>Martinez</u>, a petitioner must establish that "his counsel in the state postconviction proceeding was ineffective under the standards of <u>Strickland</u>," which requires the petitioner to establish "(a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different."  <u>Clabourne v. Ryan</u>, 745 F.3d 362, 377 (9th Cir. 2014), <u>overruled on other grounds by</u> <u>McKinney v. Ryan</u>, 813 F.3d 798, 829 (9th Cir. 2015) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish prejudice under <u>Martinez</u>, a petitioner must establish that "his 'underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'"  <u>Id.</u> (quoting <u>Martinez</u>, 132 S. Ct. at 1318).  Because determining cause and prejudice necessarily requires reviewing the merits of the underlying ineffective assistance of counsel claims, the Court turns to the merits of Petitioner's claims.

## C.    Ineffective Assistance of Counsel Claims

Petitioner alleges that trial counsel Todd Bequette rendered ineffective assistance of counsel by (1) failing to conduct a reasonable, thorough, timely investigation prior to advising Petitioner to reject the four-year plea offer, and (2) failing to inform Petitioner of his maximum sentence exposure.

United States District Court
Northern District of California

### 1.     Factual Background[9]

On June 24, 2011, Petitioner was charged by complaint with three counts of assault with a deadly weapon and one count of vandalism, arising out of the June 11, 2011 incident.  CT 1–2.

On September 21, 2011, a separate information was filed charging Petitioner with two felony charges – first-degree residential burglary, Cal. Penal Code § 459; and vandalism with over $400 in damage, Cal. Penal Code § 594(a) – arising out of his September 19, 2011 entry into Doe's home.  CT 4–5.  The information alleged that Petitioner had committed these crimes while he was released from custody on bail or on out on his own recognizance, Cal. Penal Code §12022.1.  Id.

On September 28, 2011, Petitioner appeared for a bail hearing in Alameda County Superior Court.  CT 7–11.  At that time, Petitioner was represented by public defender Sam Yun.  Id.  During the bail hearing, the court also issued a restraining order prohibiting any contact between Petitioner and Doe, except through Petitioner's lawyer.  Id. at 9.  The trial court explained

---

[9] In reviewing the reasonableness of the state court's decision denying Petitioner's ineffective assistance of counsel claim on the merits, the Court relies only on the record that was before the state court.  See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  Petitioner has requested that the Court consider evidence that was not presented to the state court, namely a second declaration from trial counsel that was filed with this Court on September 28, 2105.  See Docket No. 13 at 4.  Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record without holding an evidentiary hearing.  Rules Governing § 2254 Cases, Rule 7, 28 U.S.C.A. foll. § 2254.  However, in order to consider new evidence, two requirements must be met.  First, the petitioner must show that he was diligent in his efforts to develop the evidence in state court.  See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005), overturned on other grounds by Daire v. Lattimore, 812 F.3d 766, 768 (9th Cir. 2016) (diligence exception to the general rule against evidentiary hearings in § 2254(e) also applies to efforts to expand the record without an evidentiary hearing) (petitioner who, during state court proceedings, knew of the existence of the information that was the basis for later-prepared declarations from petitioner and petitioner's doctor did not exercise diligence when petitioner did not present that information in state court and petitioner therefore could not expand the record in habeas proceedings under Rule 7).  Second, the new evidence must not so fundamentally alter the legal claim already considered by the state courts' as to render it unexhausted.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986) (petitioner's new evidence regarding brain damage did not fundamentally alter legal claim where petitioner had provided the state court with a neuropsychological expert's initial analysis regarding his brain damage).  Here, Petitioner has failed to show that he was diligent in developing this evidence before the state court.  Trial counsel's second declaration states that trial counsel recalls that the last plea offer received from the prosecutor prior to the preliminary hearing was four years in state prison.  Docket No. 13 at 4.  Petitioner was aware of this information during the state court proceedings and provides no explanation as to why he did not present this information in the state court proceedings.

the restraining order to Petitioner:

> Mr. Rodelas, I'm going to issue a restraining order at this time.  This prohibits any contact between you and [Doe].  So no contact by anyone but your lawyer.  No contact through third parties.  No contact in writing, by phone, by any means whatsoever.  You are to stay at least 200 yards away from anyplace that she's at.  You're not to own or possess any firearms.  You'll be given a copy of this [restraining] order.  Read it over carefully.  A copy of this will go to the police and a copy of this will go to her.  Will you obey that order?

CT 9.  In response to the court's question, Petitioner responded, "Yes, your honor."  Id.

From October 2011 to December 5, 2012, Petitioner was represented by public defender Todd Bequette.  Docket No. 9-10 at 67.  On December 11, 2011, the prosecution filed an amended information that amended the first information (initially filed on June 24, 2011) to add charges of kidnapping, domestic violence, criminal threats, and vandalism, arising out of the June 22, 2011 incident.  CT 15–18.  In total, the amended complaint charged Petitioner with nine felony counts.  Id.  Trial counsel calculated that the maximum exposure for these charges was approximately 28 years in prison.  Docket No. 9-10 at 78.

On January 12, 2012, Petitioner was charged with an additional thirty-two counts of disobeying a court order, for his thirty-two contacts with Doe between December 1, 2011, and December 17, 2011, in violation of the restraining order.  CT 19–27.  These counts were added on to the amended information.  At this point, this amended information charged Petitioner with crimes arising out of the June 11, 2011 incident; the June 22, 2011 incident; and the December 2011 violations of the restraining order.  Trial counsel calculated that Petitioner's maximum exposure increased to sixty years with the additional thirty-two charges of disobeying a court order.  Docket No. 9-10 at 78.  Trial counsel does not recall whether, prior to the case being assigned to a trial court on or about April 24, 2012,[10] he communicated to Petitioner that the maximum exposure had increased to sixty years with the addition of the thirty-two misdemeanor charges.  Docket No. 9-10 at 78 and CT 282.

From February 21 to February 23, 2012, a preliminary hearing was held for the first

---

[10] According to the clerk's minutes dated April 24, 2012, on that date, the parties agreed that the trial would start on May 14, 2012.  CT 282.  The trial court later agreed to continue the trial at trial counsel's request.  CT 295, 303, 311, 319, 327, 335, and 356.

United States District Court
Northern District of California

information, which charged Petitioner with crimes arising out of the June 11, 2011 incident; the June 22, 2011 incident; and the violations of the restraining order. CT 75–244. This preliminary hearing did not address the September 19, 2011 burglary. During the preliminary hearing, Doe acknowledged that she had been speaking with Petitioner while he was incarcerated and had spoken to him as recently as a couple weeks prior to this preliminary hearing. CT 125–26, 179–81, 183.

On February 27, 2012, after the preliminary hearing, Petitioner was held to answer for the nine felonies and thirty-two misdemeanors arising out of the June 11, 2011 incident; the June 22, 2011 incident; and the violations of the restraining order. CT 245.

On April 17, 2012, a preliminary hearing was held in Petitioner's separate burglary case. CT 292.

On April 24, 2012, a trial date of May 14, 2012 was set for the case involving the first information (nine felonies and thirty-two misdemeanors arising out of the June 11, 2011 incident; the June 22, 2011 incident, and the violations of the restraining order). CT 282.

On May 4, 2012, Petitioner's case arising out of the two June 2011 incidents and the violations of the restraining order was consolidated with the separately charged September 2011 burglary case. CT 290, 2 RT at 3.

On May 11, 2012, trial counsel filed a motion to continue the jury trial, which was granted. CT 291–93, 295. In the declaration supporting the motion to continue, trial counsel stated that he needed additional time to prepare because he required more time to locate a witness to the kidding, and consult and possibly retain an expert witness regarding voice recognition expert. CT 293. Trial counsel stated he had been retained in the burglary case less than a week prior to filing the motion.

Trial counsel did not obtain the September 28, 2011 transcript wherein the trial court issued the protective order until the first day of trial, which was on or about September 18, 2012. Docket No. 9-10 at 78–79 and CT 387.

From January 2012 to April 17, 2012, Petitioner and the prosecutor were engaged in plea negotiations. Docket No. 9-10 at 67. During that time, the prosecutor offered Petitioner a plea

bargain of no less than four years.  Id.  Petitioner claims that, at that time, trial counsel had not informed Petitioner that he faced a maximum sentence of sixty years; that trial characterized the plea deal as "unreasonable;" and that trial counsel advised Petitioner to reject the plea deal. Docket No. 9-10 at 67 and 73.

Prior to trial, Petitioner told trial counsel that he had not been given notice of the restraining order.  Docket No. 9-10 at 78.

On September 25, 2012, an amended information was filed that listed all the charges in the consolidated cases, and added an additional misdemeanor charge of being armed with a dirk or dagger during the September 19, 2011 burglary, Cal. Penal Code § 12020(a)(4).  CT 52–74.  That same day, Petitioner pled no contest to all the charges.  CT 415–18 and 429–53.  At the plea hearing, trial counsel stated: "[Petitioner] wishes to plead to the sheet essentially admitting every charge in the Information.  He understands he will – that his sentence will be at the Court's discretion.  He understands the sentencing range is from probation to 60 years and four months in prison."  CT 428.  Petitioner orally informed the trial court that trial counsel's statement was accurate.  Id.

The plea advisement and waiver form notified Petitioner that his maximum sentence exposure was sixty years and four months.  CT 415.  Petitioner waived his constitutional rights, including the right to appeal, and indicated that he had a "full opportunity to discuss with my attorney the facts of my case, the elements of the charged offense(s) and enhancement(s), and any defenses that I may have, my constitutional rights and waiver of those rights, and the consequences of my plea."  CT 416–17.  At the plea hearing, Petitioner orally affirmed to the court that he had reviewed the plea advisement and waiver form with his attorney, that he understood the information contained in the form, and that he understood the consequences of his plea.  CT 432–35.

On December 5, 2012, the prosecutor recommended that Petitioner receive a sentence of fifteen years and four months.  CT 523–25.  That same day, the court sentenced Petitioner to twelve years in state prison.  CT 479–84.  For the misdemeanor charges of disobeying a court order, Petitioner was sentenced to one day in county jail for each court, to run concurrently with

12

the rest of his sentence.  CT 484.  Petitioner criticized his sentence as unfair and engaged the court

in the following exchange:

    Petitioner:    I feel like [these crimes] didn't merit me getting a [twelve year sentence].

    Court:    Okay.  Well, I can understand it.  All I can tell you, Mr. Rodelas, is that looking at this case, looking at the facts of this case and the circumstances of what was done and what you admitted to doing, the exposure that you were looking at, the discussions that we had, that I had with your attorney and with the district attorney in the case, and my evaluation of the situation that occurred on these three separate incidents, these — sort of these three separate, if you will, events, the involvement or the presence of a gun during one of them, the nature of the crimes, the fact that they continued on a sort of escalating basis.  Obviously — I discussed with your attorney if we had a situation where this first set of events that occurred on June 11th was the extent of the entire situation, that would be one thing.

        But things continued unfortunately to June 22nd, where another situation developed which involved much more serious offenses, kidnapping, as I said, the presence of a gun.  The 273.5, the usury and the threats, obviously I think a reasonable person would view that as having — consider that as things escalating or stepping up.

        And then three months later, another set of events occurs with another serious crime, a residential burglary, all against the same victim.  So you have a pattern of conduct within six months that's not good, that escalates in seriousness, that involves a weapon, that involves some very serious crimes.

        So I'm not — I don't — you know, unfortunately, depending on how you look at it, I don't know you.  I'm not passing judgment on you as a person.  Obviously, as your attorney has commented and I read, you had a long stretch of time in your life where you did not get in trouble and didn't commit serious acts like this.  But unfortunately, in that six-month span in June of 2011, it appears that you did find yourself involved in committing a series of very serious offenses.

        The discussions that we had, at least that I was privy to with your attorney and the district attorney, we all discussed potential sentences, potential issues related to sentencing.  And I think that this resolution or determination of the case is within the bounds of those discussions.

    Petitioner:    I've been sentenced to something that I just — I believe is unfair.  I mean, there's people that actually kill people, you know, and get six-year sentences.

    Court:    Well, Mr. Rodelas, obviously we can sit down and look at every single case that comes through here.  Every case is different.  Every circumstance is different.

    Petitioner:    I had a problem.  I had a drug and alcohol problem, and it would show that.  You know, I made — I made some bad mistakes.

    Court:    Um-hmm.

United States District Court
Northern District of California

13

| | |
|---|---|
| Petitioner: | And now it's — I have no chances.  I have no more chance.  I wish I had been allowed to read my whole letter. |
| Petitioner: | Mr. Rodelas, I don't — I don't know that I can sit here and discuss with you all the different angles of your case.  I think that Mr. Bequette has told me that you and he and you and your family have discussed obviously and thought about this at great length.  And there were decisions made with respect to the exposure and liability that you were looking at, and decisions that had to be made in the context of you being in a difficult situation and trying to make the best of a very, very difficult situation. |
| | I don't suppose that it's an easy predicament to find yourself in at all.  But obviously if you were to proceed down a different path, you could find yourself looking at a more serious type of a situation or a more serious sentence. |
| | The district attorney wanted you to be sentenced to a greater sentence than I imposed.  Your attorney wanted me to sentence you to a lesser sentence than I imposed.  The sentence that I arrived at was somewhere in the middle. |
| | . . . |
| Petitioner: | Just one more thing before I finish. |
| Court: | Um-hmm. |
| Petitioner: | I know this is on the record.  I pled to all these counts in the interests of justice.  I pled to them and accept responsibility in the interest of justice to give everybody something that everyone can be at peace with. |
| Court: | Um-hmm. |
| Petitioner: | What bound me to answer to all these charges were charges that I was told had no way of being — that I couldn't contend with, charges that were brought against me not by the victim, but by the district attorney; charges that were only able to be brought against me because I was never served. |
| Court: | You were never what? |
| Petitioner: | I was never served a restraining order.  So that's all I want to say for the record. |

3 RT 25–28.

On June 27, 2013, Petitioner's appellate counsel filed a <u>Wende</u> brief in the California

Court of Appeal, identifying five potential issues that might merit briefing.  <u>See</u> Answer, Ex. 4.

On July 26, 2013, Petitioner filed a supplemental brief, raising three additional issues.  <u>Rodelas</u>,

2013 WL 4743470, at *2.  Neither appellate counsel nor Petitioner challenged either the validity

of Petitioner's guilty plea or the effectiveness of Petitioner's trial counsel.  The California Court of

14

Appeal conducted its own independent review of the record and, on September 4, 2013, affirmed the judgment, finding that no arguable issues were presented for review.  Rodelas, 2013 WL 4743470.  In relevant part, the state appellate court held that Petitioner was "ably represented by counsel at all times."  Id. at *2.  The state appellate court also noted that Petitioner was sentenced to the midterm or one third the midterm sentence for his felony offenses and for one day each on the misdemeanor counts, to be served concurrently, which was substantially less than the maximum which Petitioner was advised could be imposed.  Id. at 2.

Petitioner first raised his claims of ineffective assistance of counsel in his state habeas petition to the Alameda County Superior Court, which the state court denied as untimely and therefore procedurally barred and, in the alternative, for failure to state a prima facie case for relief.  See Answer, Ex. 7.  Petitioner raised the same claims in his state habeas petitions to the California Court of Appeal and the California Supreme Court, but both courts summarily denied the petitions.  See Answer, Exs. 8 and 10.

### 2.  Standard of Review

Petitioner argues that the Alameda County Superior Court's denial of his claims does not qualify as a merits denial, and that he is therefore entitled to a de novo review of his claims. Traverse at 14.  However, the superior court made an alternative ruling on the merits, stating: "Even if the claim was not procedurally barred, relief would have been denied for failure to state a prima facie case for relief."  Answer, Ex. 7.  The Ninth Circuit has recognized, in a post-Martinez ruling, that "AEDPA deference applies to [a state court's] alternative holding on the merits." Clabourne, 745 F.3d at 383 (9th Cir. 2014).  Accordingly, the Court applies the standards set forth in 28 U.S.C. § 2254(d) in reviewing the superior court's denial of Petitioner's claims.

### 3.    Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance, of counsel.  Strickland, 466 U.S. at 686.  In order to prevail on a claim of ineffective assistance of counsel, petitioner must prove two elements.  First, he must establish that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at

15

687–88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Cullen, 131 S. Ct. at 1403 (2011); Williams, 529 U.S. at 404–08.  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  See Cullen, 131 S. Ct. at 1410–11; Harrington, 562 U.S. at 105 (2011) (same); Premo v. Moore, 562 U.S. 115, 122 (2011) (same). The general rule of Strickland, i.e., to review a trial counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington, 562 U.S. at 105.

### 4.    Failure to Investigate Claim

Petitioner argues that trial counsel's failure to investigate whether Petitioner had been properly served with the restraining order prior to September 20, 2012 constituted ineffective assistance of counsel.  Pet. at 15.  Petitioner alleges that the necessary investigation required only a twenty-minute visit to the courthouse records department.  Id.  Petitioner alleges that after trial counsel conducted this minimal investigation, trial counsel concluded that it was unlikely that Petitioner would "beat" the charges related to violating the restraining order, and advised Petitioner to plea nolo contendere to all the charges.  Id. at 16.  Petitioner argues that if trial counsel had timely investigated whether the restraining order was properly served and informed Petitioner of the results of his investigation, Petitioner would have accepted the four-year plea deal that was offered between January 2012 to April 17, 2012.  Id.

Respondent argues that there is no evidence, outside of Petitioner's own declarations, that

trial counsel's investigation of the case prior to April 17, 2012, was inadequate.  Respondent

argues that the record shows that trial counsel had a detailed understanding of the facts and issues

in the case and was well prepared to represent Petitioner.  Respondent further argues that trial

counsel made a reasonable tactical decision not to investigate whether that the restraining order

was not served on Petitioner.

In addressing Petitioner's failure-to-investigate claim, the Court keeps in mind the

heightened level of deference a federal habeas court must give to state court decisions, see

Harrington, 562 U.S. at 103–05; the requirement that "a determination of a factual issue made by a

State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1); and the petitioner's burden

"of rebutting the presumption of correctness by clear and convincing evidence," id.

Trial counsel "has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  The

Supreme Court has stated that the defendant's own statements or actions are relevant in assessing

whether trial counsel's investigation was reasonable:

> In any ineffectiveness case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.  The reasonableness of counsel's actions may be
> determined or substantially influenced by the defendant's own statements or actions.
> Counsel's actions are usually based, quite properly, on informed strategic choices made by
> the defendant and on information supplied by the defendant. In particular, what
> investigation decisions are reasonable depends critically on such information. For example,
> when the facts that support a certain potential line of defense are generally known to
> counsel because of what the defendant has said, the need for further investigation may be
> considerably diminished or eliminated altogether. And when a defendant has given counsel
> reason to believe that pursuing certain investigations would be fruitless or even harmful,
> counsel's failure to pursue those investigations may not later be challenged as
> unreasonable. In short, inquiry into counsel's conversations with the defendant may be
> critical to a proper assessment of counsel's investigation decisions, just as it may be critical
> to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. at 691. Accordingly, a decision not to investigate, when a petitioner has

provided counsel with information that such investigation is unnecessary, is not outside the range

of reasonable trial decisions and does not amount to prejudice.  Cf. Cox v. Del Papa, 542 F.3d

669, 682–83 (9th Cir. 2008) (counsel's decision not to investigate or present additional evidence

regarding defendant's drug use not prejudicial where defendant had continuously and strenuously

protested any suggestions that his behavior was the result of his drug use).

United States District Court
Northern District of California

17

Here, Petitioner's claim is based on trial counsel's alleged lack of knowledge that Petitioner was served with the restraining order in the case, but there is no evidence that trial counsel did not have this knowledge.  In fact, the restraining order was properly served on Petitioner because he was present at the hearing in which the restraining order was issued.  Cal. Family Code § 6384 (if a respondent named in a restraining order "has received actual notice of the existence and substance of the order through personal appearance in court to hear the terms of the order from the court," "no additional proof of service is required for enforcement of the order.").  In his written declarations, counsel does not state that he was unaware that Petitioner had been served with the restraining order; that he himself believed that Petitioner had not been served with the restraining order; that he based any advice to Petitioner based on such a belief; or that he took any other action consistent with such a belief.[11]  To the contrary, trial counsel testifies that he knew that Petitioner faced a maximum exposure of 60 years, ECF No. 9-10 at 78, an estimate that necessarily included the charges for violation of a restraining order.  Given that service of a restraining order is effective when issued in open court – a fact likely to be known to experience criminal defense counsel – that counsel "did not obtain the transcript of the court proceedings in which the order was made" is not by itself evidence of ineffective assistance.  Simply claiming that trial counsel conducted an inadequate investigation without some evidence to support the assertion does not meet Strickland's demanding standard.  Royal v. Martel, No. C08-5628, 2010 WL 3932075, at *7 (N.D. Cal. Oct. 5, 2010); see also Lobretto v. Sisto, No. 1:08-CV-00080-LJO, 2013 WL 509160, at *25 (E.D. Cal. Feb. 12, 2013) ("Petitioner's burden is to show, by specific and discernible evidence, that his trial counsel—in this case, not in some abstract or hypothetical case—actually provided representation that fell below Strickland's reasonableness standard and thereby prejudiced Petitioner in the process, and that the state court's adjudication of that issue was objectively unreasonable.").

---

[11] Trial counsel's declaration states as follows on the subject:  "Prior to trial, defendant claimed that he had not been given notice of the order not to communicate with the complaining witness, despite the existence of the order in the court file.  I did not obtain the transcript of the court proceeding in which the order was made prior to the first day of trial."  ECF No. 9-10 at 78-79. The declaration does not address trial counsel's knowledge of the true facts regarding service or the effect of any such knowledge on trial counsel's actions.

United States District Court
Northern District of California

1    Moreover, the record indicates that trial counsel's preparation at the time the plea was

2 offered (January 2012 to April 17, 2012) was within the broad range of reasonable competence.

3 During the February 21–23, 2012 hearing, trial counsel demonstrated familiarity with the facts of

4 the case, and aggressively cross-examined the prosecution witnesses.  In cross-examining the gas

5 station employee, he challenged her as to whether she could see Petitioner's car given the layout

6 of the gas station store.  CT 98–99, 101.  In cross-examining Doe, he elicited that she had felt

7 pressured by the police into stating that Petitioner rear-ended her on June 11, 2011, CT 201; that

8 she had been drinking with Petitioner prior to going to work on June 22, 2011, CT 202; that she

9 was not afraid when she saw Petitioner at her work place on the evening of June 22, 2011, CT

10 204; and that she exaggerated in her June 22, 2011 statement to the police because she wanted to

11 get Petitioner in trouble, CT 209.  These admissions undermined Doe's credibility and cast doubt

12 on the prosecution's version of events.  The record also indicates that trial counsel worked to

13 locate witnesses to the events immediately preceding the kidnapping, CT 292; looked into

14 retaining a voice recognition expert with respect to the charges that Petitioner violated the

15 restraining order, CT 292; and investigated whether Doe had misappropriated Petitioner's funds,

16 in order to undermine Doe's credibility as a witness, CT 344.

17    Petitioner argues that his situation is similar to Rompillas v. Beard, 545 U.S. 374 (2005),

18 where the Supreme Court found that trial counsel's failure to examine the defendant's conviction

19 file fell below the level of reasonable performance.  In Rompillas, trial counsel was aware that the

20 prosecution intended to seek the death penalty by proving the defendant had a significant history

21 of felony convictions.  Rompillas, 545 U.S. at 383.  The defendant's prior conviction file was

22 readily available at the courthouse where the defendant was to be tried; the prosecution warned

23 trial counsel twice that he would be referring to the conviction file; and despite obtaining the

24 conviction file on the eve of the sentencing hearing, Rompillas' counsel only examined the

25 victim's testimony in the file.  Id. at 383–85.  The Supreme Court found that Rompillas' counsel

26 had rendered ineffective assistance of counsel, finding that reasonable assistance of counsel

27 included obtaining information that the prosecution possessed and would use against the

28 defendant.  Id. at 387–90.  Rompillas is inapplicable to Petitioner's case.  Here, Petitioner

deliberately failed to inform his counsel that he learned of the restraining order by being present in the court hearing when it was issued.  Although this information was publicly available and easily accessed, trial counsel had been misled by Petitioner's failure, whether intentional or unintentional, to inform trial counsel how he initially learned of the restraining order.

Finally, Petitioner has failed to show prejudice from trial counsel's failure to obtain the transcript of the September 28, 2011 hearing at an earlier date, even assuming that trial counsel was otherwise unaware that the restraining order had been served.  Petitioner alleges that if trial counsel had obtained the transcript of the September 28, 2011 hearing at an earlier date, trial counsel would have discovered and communicated to Petitioner that he was facing an additional thirty-two years for the charges that he violated the restraining order, and Petitioner would have then accepted the four-year plea offer.  See Traverse at 12.  The Court finds these arguments without merit.

First, Petitioner has not provided clear and convincing evidence that trial counsel failed to communicate to him that he faced a maximum sentence exposure of sixty years prior to the expiration of the plea offer on April 17, 2012.  He has only provided a declaration from trial counsel wherein trial counsel states that he has no recollection as to whether he communicated the maximum sentence exposure to Petitioner prior to the case being set for trial on April 24, 2012. Docket No. 9-10 at 78.  Trial counsel's declaration does not support Petitioner's assertion that trial counsel did not communicate the maximum sentence exposure to him until after the plea offer had expired.  At best, trial counsel's declaration is simply unclear as to when the maximum exposure was communicated to Petitioner.

Second, any mistake or failure-to-investigate by trial counsel whether Petitioner violated the restraining order did not affect Petitioner's sentence.  Petitioner received a sentence of one day per count of violating the restraining order, to be served concurrently with the rest of his sentence. The bulk of Petitioner's sentence was related to the other charges, and Petitioner does not dispute that trial counsel timely and accurately advised him as his maximum exposure for the other charges.

Finally, to establish prejudice from counsel's advice to reject a plea offer, a petitioner must

1    show that there is a reasonable probability that, but for counsel's errors, "the plea offer would have

2    been presented to the court . . . , that the court would have accepted its terms, and that the

3    conviction or sentence, or both, under the offer's terms would have been less severe than under the

4    judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1385

5    (2012).  Petitioner has failed to show by clear and convincing evidence that the trial court would

6    have accepted a four-year plea offer.  Petitioner argues that both prosecutors and courts prefer to

7    conserve valuable resources by having defendants admit their crimes and receive more favorable

8    terms through a plea agreement:

9
        [I]t is reasonable to suppose that Rodelas' trial court would have accepted the four-year
10        plea likely containing fewer and less serious charges, otherwise, the offer makes little
         sense.  That the four-year deal was offered also indicates the district attorneys' willingness
11        to settle the matter.

12   Traverse at 15.  There is no evidence in the record that the four-year plea offer included dismissing

13   the more serious charges.  Without any evidence regarding the specifics of the four-year plea

14   offer, it would also be reasonable to assume that the four-year plea offer was intended to only

15   dispose of the charges arising out of the September 19, 2011 incident.  Moreover, in the

16   sentencing hearing, the court stressed that the escalating nature of the crimes required a sentence

17   of fifteen years and four months.  3 RT 25–28.  Without evidence that the plea offer included

18   dismissing a number of the charges, Petitioner has failed to show a reasonable probability that the

19   court would have accepted a four-year plea offer for the forty-four charges against Petitioner,

20   arising out of an escalating series of serious crimes.

21        After thoroughly reviewing the record and "indulg[ing the] strong presumption that

22   counsel's conduct [fell] within the wide range of reasonable professional assistance, Strickland,

23   466 U.S. at 689, the Court finds that the state court's denial of this claim was not contrary to, or an

24   unreasonable application of, clearly established federal law, and was not based on an unreasonable

25   determination of the facts.  Petitioner is not entitled to habeas relief on his failure-to-investigate

26   claim.

27        **5.      Failure to Advise Claim**

28        Petitioner argues that trial counsel rendered ineffective assistance of counsel when (1) trial

United States District Court
Northern District of California

counsel failed to inform Petitioner of his exposure to a sixty-year sentence prior to the case being set for trial, and (2) when trial counsel advised Petitioner to reject the four-year plea deal. Petitioner further alleges that if he had been informed that he faced a maximum sentence exposure of sixty years, he would have accepted the four-year plea deal that was offered between January 2012 to April 17, 2012.

Respondent argues that there is no evidence, outside of Petitioner's own declarations, that Petitioner was extended a plea offer of four years or that trial counsel failed to timely communicate to Petitioner the maximum exposure for all charges. Respondent also argues that trial counsel's advice was within the range of competence demanded of criminal attorneys, and that Petitioner has failed to demonstrate prejudice.

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002). Therefore, the two-part test of Strickland applies to counsel's ineffective assistance in advising a defendant to accept or reject a plea offer. See Hill v. Lockhart, 474 U.S. 52, 57–58 (1985); Nunes v. Mueller, 350 F.3d 1045, 1051–53 (9th Cir. 2003) (rejecting attempt to limit Hill to acceptance of plea offer). In plea situations, the first "inquiry is whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Turner, 281 F.3d at 879 (internal quotations and citations omitted). "The second part, the prejudice inquiry, 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" Id. In light of the complexity and uncertainties that attend plea bargaining, it is especially essential that the habeas court respect the latitude for counsel's judgment that Strickland requires. See Premo, 562 U.S. at 125, 126–28 (Ninth Circuit erred in concluding trial counsel engaged in deficient performance by not moving to exclude a confession before advising client to take a plea bargain early in the proceedings). In advising a defendant, "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." Turner, 281 F.3d at 881 (counsel who advised defendant to reject offer of 15-years-to-life was not deficient where evidence showed that petitioner informed of potential death penalty at trial, and counsel had allowed petitioner to

1    think about offer overnight).  Erroneous advice regarding the consequences of a guilty plea is

2    insufficient to establish ineffective assistance; petitioner must establish a "'gross

3    mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice

4    on the probable effects of going to trial.'"  Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th

5    Cir. 2004) (citing United States v. Keller, 902 F.2d 1391, 1394 (9th Cir. 1990)).

6         Petitioner cites nothing in the record supporting his allegations that trial counsel failed to

7    communicate to him his maximum exposure prior to April 17, 2012, and that trial counsel advised

8    him to reject the four-year plea offer.  As discussed infra in Section C.4, trial counsel's declaration

9    is ambiguous at best as to when trial counsel communicated the sixty-year maximum exposure to

10   Petitioner.  Petitioner's self-serving statements are insufficient to establish his allegations.  See

11   Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance of

12   counsel claim when "[o]ther than Womack's own self-serving statement, there is no evidence" to

13   support the claim); Turner, 281 F.3d at 881 ("'[S]elf-serving statements by a defendant that his

14   conviction was constitutionally infirm are insufficient to overcome the presumption of regularity

15   accorded state convictions.'").

16        In addition, assuming for the sake of argument that trial counsel failed to inform Petitioner

17   that his maximum exposure was sixty years in prison; that trial counsel characterized the four-year

18   plea offer as "unreasonable;" and that trial counsel advised Petitioner to reject the four-year plea

19   offer, trial counsel's inaccurate prediction of Petitioner's ultimate sentence was not a "gross

20   mischaracterization of the likely outcome."  Cf. Jones v. Woodford, Civil Case No. 03cv1463

21   J(RBB), 2008 WL 505230 at *25 (S.D. Cal. February 25, 2008) (denying ineffective assistance

22   claim and finding no "gross error" by counsel where trial counsel informed petitioner of maximum

23   exposure of twenty-four years and told petitioner optimistically that his chances at trial were "50–

24   50," petitioner rejected plea bargain of twelve years, then prosecution amended information and

25   maximum exposure increased to thirty-seven years, and after trial he was sentenced to thirty-seven

26   years).

27        Finally, as discussed infra in Section C.4, Petitioner has also failed to establish prejudice

28   because he has failed to establish a reasonable probability that court would have accepted the four-

United States District Court
Northern District of California

year plea offer.

Accordingly, the state court's rejection of Petitioner's failure-to-inform ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.  See Gentry v. Sinclair, 705 F.3d 884, 900 (9th Cir. 2012) ("Because 'counsel is strongly presumed to have rendered adequate assistance,'" it was not unreasonable for state court to reject petitioner's ineffective assistance of counsel claim when petitioner provided no evidence to support the claim) (quoting Strickland, 466 U.S. at 690)); Sandgathe v. Maass, 314 F.3d 371, 379 (9th Cir. 2002) (affirming denial of ineffective assistance of counsel claim when petitioner presented no evidence in support of claim).  Petitioner is not entitled to habeas relief on his failure-to-advise claim.

**D.     Request for Evidentiary Hearing**

Petitioner argues that he is entitled to an evidentiary hearing on his ineffective assistance of counsel claims because the state court's failure to hold an evidentiary hearing on his claims renders the state court's factual determinations unreasonable, and because the state court overlooked or ignored evidence of highly probative value.  In his petition, Petitioner seeks an evidentiary hearing regarding the following factual disputes: (1) counsel's tactical decisions regarding the investigation he made and relied upon in advising Petitioner whether or not to accept the plea offer; and (2) whether counsel failed to inform Plaintiff of his maximum sentence exposure.  Pet. at 14.[12]

---

[12] In his traverse, Petitioner requests that the evidentiary hearing address the following additional issues:  (1) whether Petitioner was offered a four-year plea offer; (2) whether Petitioner would have accepted the four-year plea offer; (3) Respondent's assertion that Petitioner claims that he did not violate the restraining order, and (4) whether trial counsel is entitled to a presumption of competence.  Docket No. 14 at 25.  In analyzing the merits of Petitioner's ineffective assistance of counsel claims, the Court has presumed that Petitioner was offered a four-year plea offer, so there is no need for an evidentiary hearing on this issue.  The second issue is not dispositive in determining whether counsel was ineffective.  As discussed infra, whether trial counsel was ineffective turns on whether the advice to reject the plea offer was unreasonable, and whether it caused Petitioner prejudice.  Turner, 281 F.3d at 879.  As to third issue, in analyzing the merits of Petitioner's ineffective assistance of counsel claims, the Court has presumed that Petitioner's defense to the charges related to the restraining order was that he was not properly served with the restraining order and not that he did not make the calls to Doe.  Accordingly, there is no need for an evidentiary hearing on this issue either.  Finally, the fourth issue is a legal question and not properly the focus of an evidentiary hearing.

1    Petitioner incorrectly argues an evidentiary hearing is compelled by the Ninth Circuit's

2    holding in Nunes v. Mueller, 350 F.3d 1045 (9th Cir. 2003) and Taylor v. Maddox, 366 F.3d 992

3    (9th Cir. 2004).  In Nunes, the Ninth Circuit found that the state court had acted unreasonably in

4    not holding an evidentiary hearing.  Nunes, 350 F.3d at 1055 n.7.  However, in both Nunes and

5    two subsequent Ninth Circuit cases, Lambert v. Blodgett, 393 F.3d 943, (9th Cir. 2004), and

6    Hibbler v. Benedetti, 693 F.3d 1140, 1147 (9th Cir. 2012), the Ninth Circuit made clear that

7    holding an evidentiary hearing is not a per se requirement for a state court to reasonably determine

8    that a petitioner's allegations are not credible or do not justify relief.  Nunes, 350 F.3d at 1055;

9    Lambert, 393 F.3d at 969 (Ninth Circuit specifically "declines to accept Lambert's proposal to

10   inject an 'evidentiary hearing' requirement as a pre-requisite to AEDPA deference"); Hibbler, 693

11   F.3d at 1147 ("we have never held that a state court must conduct an evidentiary hearing to resolve

12   every disputed factual question; such a per se rule would be counter not only to the deference

13   owed to state courts under AEDPA, but to Supreme Court precedent.").  In Taylor, the Ninth

14   Circuit held that "where the state court should have made a finding of fact but neglected to do

15   so . . . the state-court factual determination is perforce unreasonable and there is nothing to which

16   the presumption of correctness [required by 28 U.S.C. § 2254(e)(1)] can attach." Taylor, 366 F.3d

17   at 1000–01.  However, the Ninth Circuit also made clear in in Taylor that before a federal court

18   could conclude that the state-court factual determinations were "perforce unreasonable," the

19   federal court must conclude that the state-court fact-finding process was either defective in some

20   material way or non-existent.  Id. at 1000.  Petitioner alleges that the state court's failure to hold

21   an evidentiary hearing rendered the state court fact-finding process defective because the state

22   court overlooked or ignored highly probative evidence.  However, as the Court discussed supra,

23   the evidence presented by Petitioner in the state-court proceeding did not demonstrate that trial

24   counsel was ineffective.  Accordingly, there is no basis for presuming that the state court's denial

25   of Petitioner's claims does not deserve AEDPA deference, and that an evidentiary hearing is

26   required.

27    Moreover, Petitioner has not satisfied AEDPA's requirements for an evidentiary hearing.

28   28 U.S.C. § 2254(e)(2) prohibits the Court from holding an evidentiary hearing on a claim where

United States District Court
Northern District of California

25

the petitioner has failed to develop the factual basis of the claim in state court unless (1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence; and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Petitioner argues that he is exempt from the requirements of Section 2254(e)(2) because he diligently sought an evidentiary hearing in state court.  Traverse at 24.  Petitioner is incorrect. Petitioner is correct that the Supreme Court has held that under Section 2254(e)(2), "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Williams, 529 U.S. at 437.  However, making this minimum effort does not necessarily satisfy the diligence requirement.  In Williams, the Supreme Court found that petitioner had not been diligent in developing the facts related to his claim that nondisclosure of a psychiatric report was in contravention of Brady v. Maryland, 373 U.S. 83 (1963) when the petitioner was aware of the existence and importance of the report during the state court proceeding, but failed to provide the report until the federal habeas proceedings. Williams, 529 U.S. at 437–40.  The petitioner had sought an evidentiary hearing in state court, but had not raised his Brady claim in state court.  Here, Petitioner failed to develop the factual basis of his ineffective assistance of counsel claims in the state court proceeding.  He could have, but did not, submit evidence attesting as to when trial counsel informed him of his maximum exposure; as to why trial counsel waited until the first day of trial to retrieve the transcript of the September 28, 2011 hearing; and as to whether and why trial counsel advised him to reject the four-year plea deal.  Instead, Petitioner submitted a declaration from trial counsel that is ambiguous at best.

The Court finds that Petitioner was not diligent in developing the factual basis of his claim in state court, and he has not satisfied the requirements of Section 2254(e)(2).  Accordingly, Petitioner is not entitled to an evidentiary hearing.

United States District Court
Northern District of California

1

**E.      Certificate of Appealability**

2          The federal rules governing habeas cases brought by state prisoners require a district court

3  that issues an order denying a habeas petition to either grant or deny therein a certificate of

4  appealability.  See Rules Governing § 2254 Case, Rule 11(a).

5          A judge shall grant a certificate of appealability "only if the applicant has made a

6  substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

7  certificate must indicate which issues satisfy this standard.  Id. § 2253(c)(3).  "Where a district

8  court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

9  is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

10 court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S.

11 473, 484 (2000).

12         Here, Petitioner has not made such a showing, and, accordingly, a certificate of

13 appealability will be denied.

14         IT IS SO ORDERED.

15 Dated: August 1, 2016

16

17                                                              JON S. TIGAR
                                                        United States District Judge
18

19

20

21

22

23

24

25

26

27

28